IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| SABRINA GRAHAM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:15-cv-04155-NKL |
| | ) |
| SAREP NOEUY, et al., | ) |
| | ) |
| Defendants. | ) |

**ORDER**

Plaintiff Sabrina Graham moves to exclude portions of the opinion of Defendant Sareap Noeuy's expert, John Krause, M.D. Doc. 120. The motion is granted in part and denied in part.

**I.  Background**

Graham alleges she suffered injuries, including injuries to her left ankle, when she and Nouey had a car accident. She complains of left ankle pain, and her treating physician has recommended surgery to correct posterior tibial tendon dysfunction (PTTD).

Dr. Krause is board-certified orthopedic surgeon who specializes in the lower extremity. He examined Graham, took a history, reviewed her medical records, and provided an opinion concerning the alleged injuries to her left ankle. Dr. Kraus identified a tear in Graham's left posterior tibial tendon. He opined that the tear was chronic and not caused by the accident, and that Graham's PTTD was a condition that pre-existed the accident. He also opined that Graham expressed some degree of "symptom magnification" during her exam, in trying to relate pre-existing toe or bunion pain to her alleged ankle pain.

Graham challenges the factual bases for Dr. Krause's opinions. First, she asks that Dr. Krause be precluded from offering testimony that she has a chronic, pre-existing condition. Specifically, she asks that Dr. Krause be precluded from testifying that her posterior

tibial tendon tear was chronic rather than acute, the accident did not cause the tear, the condition pre-existed the accident, and the surgery proposed by her treating physician is to treat her preexisting condition. She also asks that Dr. Krause be precluded from opining that she displayed "symptom magnification" when he examined her.

## II. Discussion

Under Rule 702 of the Federal Rules of Civil Procedure, the Court considers whether (1) the expert testimony is relevant in that it will be useful to the trier of fact, and (2) the expert is qualified to assist the finder of fact, and (3) the proposed evidence is reliable or trustworthy. As to trustworthiness, the Court considers whether the evidence is based upon sufficient facts or data, and is the product of reliable principles and methods, and whether the witness has applied those principles and methods reliably to the facts. *Lauzon v. Senco Prods., Inc.,* 270 F.3d 681, 686 (8th Cir. 2001). These considerations are made with an eye toward the factors set out in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993): whether a theory or technique can or has been tested; whether it has been subjected to peer review and publication; the known or potential rate of error; and whether the theory is generally accepted. *Id.* at 686–87.

The standard for admission of expert testimony is a liberal one. *Johnson v. Mead Johnson & Co., LLC,* 754 F.3d 557, 562 (8th Cir. 2014). "As long as the expert's ... testimony rests upon good grounds based on what is known it should be tested by the adversary process with competing expert testimony and cross-examination, rather than excluded by the court at the outset." *Id.* A district court has "broad discretion" to admit or exclude expert testimony. *Clark v. Hedrick, M.D.,* 150 F.3d 912, 915 (8th Cir. 1998). *See also Wagner v. Hesston Corp.,* 450 F.3d 756, 758 (8th Cir. 2006) ("Under the framework developed in *Daubert,* trial courts must serve as gatekeepers to insure that proffered expert testimony is both relevant and reliable. Trial courts are given broad discretion in fulfilling this gatekeeping role[.]").

### A. The expert's opinions concerning a chronic, preexisting condition

Generally, a medical expert can testify as to the source and cause of a person's injury or pain. *Williams v. Wal-Mart Stores, Inc.,* 922 F.2d 1357, 1361 (8th Cir. 1990). In *Williams,* for example, the court of appeals held the trial court abused its discretion in not permitting a medical expert to testify whether the type of injury seen in the plaintiff was caused by trauma. *Id.* Such testimony would have helped the jury understand the nature of the injuries. *Id.*

Further, as a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination. Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded. *Bonner v. ISP Techs., Inc.,* 259 F.3d 924, 929–30 (8th Cir. 2001) (citation omitted).

Dr. Krause opined that Graham has a classic case of PTTD, stage II, with a chronic tear in the tendon, and that, to a reasonable degree of medical certainty, the car accident did not cause it. He testified that the posterior tibial tendon degenerates over time, can become elongated or inflamed, and can eventually tear or rupture. The condition commonly develops in persons who are 50 to 70 years old, and is more common in women than men. The condition can become painful, but people who are developing PTTD may not experience ankle pain for years, even if they have developed a chronic tear, and may not even know they have developed a tear. In contrast, he explained, when people suffer an acute tear or rupture of the posterior tibial tendon as a result of trauma, they know they have suffered one. The posterior tibial tendon is a large anatomical structure, and people cannot walk away from a traumatic tear or rupture of the tendon, due to acute and obvious pain. The trauma also typically causes observable bruising. Dr. Krause said no doctor could pinpoint when Graham's tear occurred. There were no x-rays or MRI's of the ankle before the accident, and Graham did not appear to have complained of ankle

pain before the accident. But he noted that Graham is a woman in her 50's, she walked away from the accident, and nothing suggests she had ankle bruising after the accident. In addition to examining Graham and taking her history, he reviewed her medical records, including x-rays and an MRI taken after the accident, which he opined were consistent with a chronic condition and supported his conclusion that Graham had a chronic condition that pre-existed the accident.

Graham argues that Dr. Krause should not be permitted to testify her tear was chronic because he cannot identify, to a reasonable degree of medical certainty, when the tear occurred—before or after the accident, and because he uses the words "rupture" and "tear" slightly differently than her treating physician does. He explained why the timing of the tear could not be pinpointed, and why it was not an acute one that occurred in connection with the accident. He stated his opinion in terms of a reasonable degree of medical certainty. He also explained how he was using "rupture" and "tear" in connection with his opinion. Graham's criticisms may be proper to explore on cross-examination, but are not bases for excluding the expert's opinion that Graham's PTTD is a chronic, preexisting condition. The opinion would help the jury understand the nature of Graham's injury and is not "fundamentally unsupported."

Graham also argues that, unlike her treating physician, Dr. Krause failed to consider a second MRI that was performed after the accident, and Dr. Krause's opinion is therefore based on "incomplete" records and impermissibly "speculative." Doc. 130, p. 5. Dr. Krause's opinion is based on an examination, his review of the records made available to him, and the history he took, as informed by his training and experience. It is not fundamentally unsupported.

The Court in its discretion denies Graham's request that Dr. Krause be precluded from offering testimony based on his opinion that she has a chronic, pre-existing condition.

4

Case 2:15-cv-04155-NKL   Document 154   Filed 10/27/16   Page 4 of 6

### B. "Symptom magnification"

Dr. Krause opined that Graham had "some degree of symptom magnification on exam." Doc. 122-3, p. 3; *see also* Doc. 122-1, p. 14. Graham argues that the opinion should be excluded because it improperly goes to credibility, a question for the jury and not an expert.

An expert may not testify to bolster or attack witness credibility. *Westcott v. Crinklaw,* 68 F.3d 1073, 1076-77 (8th Cir. 1994). For example, in *Nichols v. American Nat'l Ins. Co.,* 154 F.3d 875, 882-83 (8th Cir. 1998), a sexual harassment case, the Court of Appeals explained that expert psychiatric testimony impugning the plaintiff's psychiatric credibility and suggesting that recall bias, a motivation of secondary gain, and malingering had influenced her story were not a proper subject of expert testimony under FRE 702. The expert should not have been permitted "to answer the very question at the heart of the jury's task—could [the plaintiff] be believed?" *Id.* Such an opinion could "create a serious danger of confusing or misleading the jury, … causing it to substitute the expert's credibility assessment for its own common sense determination." *Id.*

Here, Dr. Krause noted that Graham has bilateral bunions and other degenerative changes in some toes, for which she was treated prior to the accident. Graham complained of bunion or toe pain as well as ankle pain when Dr. Krause examined her, and told the doctor that the pains were related to each other, i.e., they went back and forth between the toes and ankle. Doc. 122-1, pp. 14 and 18. Dr. Krause explained that although Graham was trying to portray that her complaints of toe pain were related to her posterior tibial tendon, those complaints were "significantly out of the norm for a patient with stage II posterior tibial tendon dysfunction." Doc. 122-3, p. 4; *see also* Doc. 122-1, p. 14. He testified that Graham was "magnifying her symptoms to try to convince [him] of something more than what existed[,]" and that it "is pretty obvious when people do this[,] you don't have to be highly trained to pick it up." Doc. 122-1,

5

pp. 14 and 18. He further explained that the posterior tibial tendon stops mid-foot and could not cause pain in the bunions. *Id.* at p. 18.

Dr. Krause's conclusion—that Graham displayed "symptom magnification"—is, at a high level, similar to the psychiatric credibility evidence rejected by the Eighth Circuit in *Nichols* as the type of evidence invading the jury's duty to determine credibility. Dr. Krause even remarked that it "is pretty obvious when people [display symptom magnification]" and "you don't have to be highly trained to pick it up." However, this case is distinguishable from psychiatric credibility cases like *Nichols*. As the Defendant points out, experts render medical diagnoses, not lay persons, and medical experts may testify as to the cause of injury or pain. Dr. Krause in fact based his opinion concerning the source of Graham's injury and pain on medical training, observations, history, medical records, and an orthopedic examination. Therefore, the Court in its discretion will exclude Dr. Krause's testimony that Graham displayed "symptom magnification." But Dr. Krause may offer expert testimony concerning the causes of Graham's ankle pain and toe pain.

### III. Conclusion

Plaintiff Graham's motion to exclude portions of the opinion of Defendant Noeuy's expert, John Krause, M.D., Doc. 120, is granted in part and denied in part.

s/ Nanette K. Laughrey  
NANETTE K. LAUGHREY  
United States District Judge

Dated: October 27, 2016  
Jefferson City, Missouri