IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| SABRINA GRAHAM, )<br>)<br>Plaintiff )<br>)<br>v. )<br>)<br>SAREP NOEUY, )<br>)<br>Defendant. ) | No. 2:15-cv-04155-NKL |

**ORDER**

Defendant Sareap Noeuy moves to exclude testimony of Plaintiff Sabrina Graham's expert witnesses, Kurt Krueger, an economist, and Mitchell Mullins, a life care planner. Doc. 115. The motion is denied.

**I.  Discussion**

Under Rule 702 of the Federal Rules of Civil Procedure, the Court considers whether (1) the expert testimony is relevant in that it will be useful to the trier of fact, and (2) the expert is qualified to assist the finder of fact, and (3) the proposed evidence is reliable or trustworthy. As to trustworthiness, the Court considers whether the evidence is based upon sufficient facts or data, and is the product of reliable principles and methods, and whether the witness has applied those principles and methods reliably to the facts. *Lauzon v. Senco Prods., Inc.,* 270 F.3d 681, 686 (8th Cir. 2001). These considerations are made with an eye toward the factors set out in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993): whether a theory or technique can or has been tested; whether it has been subjected to peer review and publication; the known or potential rate of error; and whether the theory is generally accepted. *Id.* at 686–87.

The standard for admission of expert testimony is a liberal one. *Johnson v. Mead*

*Johnson & Co., LLC,* 754 F.3d 557, 562 (8th Cir. 2014). "As long as the expert's ... testimony rests upon good grounds based on what is known it should be tested by the adversary process with competing expert testimony and cross-examination, rather than excluded by the court at the outset." *Id.* A district court has "broad discretion" to admit or exclude expert testimony. *Clark v. Hedrick, M.D.,* 150 F.3d 912, 915 (8th Cir. 1998). *See also Wagner v. Hesston Corp.,* 450 F.3d 756, 758 (8th Cir. 2006) ("Under the framework developed in *Daubert,* trial courts must serve as gatekeepers to insure that proffered expert testimony is both relevant and reliable. Trial courts are given broad discretion in fulfilling this gatekeeping role[.]").

As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination. Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded. *Bonner v. ISP Techs., Inc.,* 259 F.3d 924, 929–30 (8th Cir. 2001) (citation omitted).

### A. The Krueger opinion

Graham alleges she was injured in a car accident she had with Noeuy, and she seeks to offer the opinion of Kurt Krueger, who will testify to her past and future lost earning capacity, and the economic value of her loss of household and farm services.

Krueger is a senior economist at John Ward economics, who performs expert economic appraisal work. In preparing his expert report for this case, Krueger reviewed Graham's W-2 and income tax forms from 2009-2015; various pay stubs from 2014, 2015, and 2016; emails from Graham to her attorneys; Graham's deposition transcript; and Graham's resume. In calculating Graham's lost earning capacity, Krueger first determined Graham's anticipated annual full-time earnings level. In making these calculations, he relied on Graham's W-2 income tax records and

pay stubs, which established her hourly wage rate. Further, he relied on Graham's deposition, in which she testified that her regular work schedule is three, twelve-hour shifts per week. She further stated that her employer routinely offers her overtime work, and that she desires to work as much overtime as possible. Krueger's calculations of Graham's earnings capacity assumed a 36-hour workweek and one overtime shift per pay period.

Noeuy first argues that Krueger's calculation of Graham's past lost earning capacity is not based upon Graham's actual employment situation or opportunities, emphasizing that Graham is only employed on an "as needed" or "p.r.n." basis. Doc. 115, p. 7. Further, he argues that Graham is not guaranteed an overtime shift per pay period and that her employment records indicate she has worked as much, if not more, since her accident. Although Noeuy is correct that Graham is employed on an "as needed" basis and her earnings were greater in 2015 than in the recent prior years, these facts do not demonstrate that Krueger's calculation of Graham's lost earning capacity is fundamentally inaccurate or unreliable. Krueger testified that lost earnings and lost earning capacity are two distinct concepts: earning capacity is the amount an individual is *capable* of earning, while earnings represent what an individual actually earns. Doc. 123-6, p.14. Thus, the fact that Graham is employed as an "as needed" basis and is not guaranteed an overtime shift per pay period does not impact the calculation of what she is capable of earning. Doc. 115-2, p. 14. Further, the facts Krueger assumed in reaching his calculations are supported by evidence in the record. Graham testified that she desires to take as many overtime shifts as possible, and that she declined two to three overtime shifts per pay period because of her physical limitations. Krueger's opinion that Graham's earnings were lower than her full-time earning capacity is therefore admissible. Noeuy may cross-examine Krueger as to the distinction between loss of earnings and lost earning capacity.

3

Case 2:15-cv-04155-NKL   Document 155   Filed 10/27/16   Page 3 of 5

Krueger's opinion concerning Graham's future lost earning capacity, and loss of household and farm services, is also admissible. In his projection of future economic loss, Krueger assumed Graham will never fully, physically recover. Noeuy argues that Krueger's opinion should be excluded because it was based solely on Graham's own statements, not medical evidence. But Graham points to the opinion of her treating physician, Dr. Benjamin Summerhays, in support of her claim that she will not fully recover. Noeuy identifies no authority mandating exclusion of an expert opinion that fails to cite supporting medical evidence otherwise reflected in the record, nor is the Court aware of any. Further, the factual basis of an expert opinion generally goes to the credibility of testimony, not its admissibility. *Bonner,* 259 F.3d at 929–30. The Court cannot say Krueger's opinion so lacks fundamental support that it will be of no assistance to the jury. Therefore, Noeuy's motion to exclude the Kreuger opinion is denied.

### B. The Mullins opinion

Graham seeks to admit the opinion of Dr. Mitchell Mullins, an emergency medicine physician and "life care planner," who will testify to the costs of Graham's future "life care plan" as a result of the accident. Doc. 123, p. 8. In arriving at his opinion, Mullins performed a detailed evaluation. The purposes of the evaluation were to (1) assess the extent to which Graham's injuries impede her ability to live independently, and (2) make recommendations to the items and services Graham will need to obtain a quality of life post-injury. Doc. 123-10, p. 1.

Noeuy argues that Dr. Mullins' opinion should be excluded because it is based on the unsupported premise that Graham is permanently disabled. Doc. 115, p.10. But Dr. Mullins is a trained medical professional who performed a detailed evaluation. He interviewed and examined

4

Case 2:15-cv-04155-NKL   Document 155   Filed 10/27/16   Page 4 of 5

Graham, reviewed medical records including those prepared by her treating physicians, and prepared a report. Doc. 123-8, p. 6. He concluded Graham "continues to experience significant physical limitations that affect her ability to fully participate in activities of daily living" and that she "will continue to require medical care and management of her injuries throughout her life." Doc. 123-10, p. 9. Dr. Mullins' opinion is not fundamentally unsupported. Noeuy may cross-examine Mullins concerning the factual bases for his opinions.

Noeuy further argues that Mullins' life care plan is based on cost estimates, which do not reflect adequate adjustments. But as Graham notes, in Missouri there is a rebuttable presumption that the dollar amount necessary to satisfy the financial obligation to a health care provider represent the value of the medical treatment rendered. Mo. Rev. Stat. § 490.715.5(2); *Deck v. Teasley*, 322 S.W.3d 536, 539 (Mo. 2010). Graham may present evidence to rebut this presumption.

## II. Conclusion

Defendant Noeuy's motion to exclude expert opinions, Doc. 115, is denied.

s/ Nanette K. Laughrey<br>
NANETTE K. LAUGHREY<br>
United States District Judge

Dated: October 27, 2016
Jefferson City, Missouri